IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| **ADAM B. BENTLEY,** ] | |
| ] | |
| Plaintiffs, ] | |
| ] | |
| v. ] | Civil Action No. |
| ] | 5:11-BE-01036-NE |
| **MICHAEL ASTRUE** ] | |
| **COMMISSIONER OF** ] | |
| **SOCIAL SECURITY,** ] | |
| ] | |
| Defendant. ] | |

**MEMORANDUM OF DECISION**

**I. INTRODUCTION**

On July 28, 2008, the claimant, Adam Bentley, applied for disability insurance and supplemental security income under Titles II and XVI of the Social Security Act. The claimant originally alleged disability onset of August 23, 2001 because of ADHD only, but amended that disability onset date to the date of his application, July 28, 2008. The Commissioner denied the claims on September 19, 2008. During the course of his administrative appeal process, the claimant added alleged impairments of bipolar disorder, major depressive disorder, polysubstance abuse, scoliosis, arthritis, lumbago, facial and dental pain, and asthma. (R. 15-18). The claimant, represented by counsel, requested a hearing before an Administrative Law Judge, and the ALJ held a hearing on April 21, 2010. (R. 44). In his opinion, dated October 1, 2010, the ALJ declared the claimant not disabled as defined by the Social Security Act; therefore, he can not receive benefits. (R. 28). On January 20, 2011, the Appeals Council denied the claimant's

1

request for review and made the ALJ's decision the final decision of the Commissioner of the Social Security Administration. (R. 1). The claimant has exhausted his administrative remedies, and this court has jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). For the reasons stated below, this court AFFIRMS the decision of the Commissioner.

## II. ISSUES PRESENTED

The claimant presents the following issues for review: 1) whether the ALJ applied improper legal standards when he gave little evidentiary weight to the opinion of Dr. Haney, the consultative psychologist; and 2) whether the ALJ failed to develop a full and fair record by not obtaining a second consultative psychological evaluation.

## III. STANDARD OF REVIEW

The standard for reviewing the Commissioner's decision is limited. This court must affirm the Commissioner's decision if the Commissioner applied the correct legal standards and if the factual conclusions are supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Graham v. Apfel,* 129 F.3d 1420, 1422 (11th Cir. 1997); *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

"No . . . presumption of validity attaches to the [Commissioner's] legal conclusions, including determination of the proper standards to be applied in evaluating claims." *Walker,* 826 F.2d at 999. This court does not review the Commissioner's factual determinations *de novo*, but will affirm those factual determinations that are supported by substantial evidence. "Substantial evidence" is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

The court must "scrutinize the record in its entirety to determine the reasonableness of the [Commissioner]'s factual findings." *Walker*, 826 F.2d at 999. A reviewing court must not look only to those parts of the record that support the decision of the ALJ, but must also view the record in its entirety and take account of evidence that detracts from the evidence on which the ALJ relied. *Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986).

## IV. LEGAL STANDARD

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months" 42 U.S.C. § 423(d)(1)(A). To make this determination, the Commissioner employs a five-step, sequential evaluation process:

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. pt. 404, subpt. P, app. 1?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986); 20 C.F.R. §§ 404.1520, 416.920.

One of the issues involved in the instant case is whether substantial evidence supports the ALJ's affording little weight to the opinion of a consulting psychologist.  If the ALJ states specific grounds for doing so and substantial evidence supports his decision, he can reject any medical opinion. *See Syrock*, 764 F.2d at 835; *Sharfaz* 825 F.2d at 279. In general, a one-time

consultative physician's opinion is entitled to less weight than a treating physician's opinion. *Broughton*, 776 F.2d at 961-62. Furthermore, regulations allow an ALJ to consider the examining relationship, treatment relationship, supportability, consistency, and other factors when weighing the opinions of physicians. 20 C.F.R. § 416.927(d)(2-6).

When alleging disability, the claimant carries the burden of proving that he is disabled, and he alone is responsible for producing evidence to support his claim. 20 C.F.R. §§ 404.1512(a), 416.912(a); *Ellison,* 355 F.3d at 1275. However, the ALJ's responsibilities require him to develop a full and fair record, which consists of a medical history of at least the twelve months preceding the month in which the claimant files his application, unless the development of an earlier period is necessary, or unless the claimant alleges his disability began less than twelve months before he filed his application. 20 C.F.R. §§ 404.1512(d), 404.912(d). While the ALJ may order a consultative examination when the evidence is insufficient to make a determination, he is only required to do so when that exam is necessary to make an informed decision. *See Reeves v. Heckler,* 734 F.2d 519, 522 (11th Cir. 1984). However, an ALJ has no duty to order a consultative evaluation where a sufficient record exists to make a determination and no previous treating or consultative physician has recommended an additional evaluation. *See Wilson v. Apfel*, 179 F.3d 1276, 1278 (11th Cir. 1999); *see also Good v. Astrue*, 240 F. App'x. 399, 404 (11th Cir. 2007).

## V. FACTS

The claimant, twenty-six years old at the time of the administrative hearing, possesses a tenth-grade education consisting largely of special education classes. In his initial application for

benefits on July 28, 2008[1], the claimant alleged disability based on ADHD. (R. 247 , 44). At the hearing before the ALJ on April 21, 2010, the claimant alleged new disabilities including anxiety, bipolar disorder, depression, polysubstance abuse, asthma, facial and dental pain, and back pain resulting from sciolosis and arthritis. (R. 54 -60). After he lost his job at Big Lots in October 2008, the claimant unsuccessfully sought other jobs and received unemployment benefits until January 2010. (R. 44, 50-53).

*Physical Limitations*

On October 13, 2008, three men assaulted the claimant and fractured his left zygomaxillary complex (cheek), left mandible (chin), and left orbital bone (temple). (R. 502). Dr. William Littlejohn, a surgeon at Decatur General Hospital, performed facial reconstructive surgery on the claimant the same day as the assault. Two months later, the claimant visited the Emergency Department at Decatur General after a friend's child kicked him in the face, but caused no further injury to his facial bones, and doctors treated his pain with Darvacet. (R. 496). On February 19, 2009, the claimant went to the Emergency Department at Decatur General complaining of mouth pain, and physician Dr. Robert Echols diagnosed the claimant with a dental abscess, prescribed Percocet, and told the claimant to follow up with his surgeon, Dr. Littlejohn. (R. 487-491). The claimant did not follow up with Dr. Littlejohn. On June 11, 2009, the claimant again sought pain medication in the Emergency Department at Decatur General, but stormed out after being asked to calm down and stop cursing. (R. 460). The claimant visited the

---

[1] The claimant originally alleged he became disabled on August 23, 2001 when he was eighteen years old; however, that onset date was amended to mirror the date of his application, July 28, 2008.

same Emergency Department again on February 4, 2010 to request pain medication for mouth and jaw pain, but physician's assistant Marlee Brown only prescribed him Motrin as she noted inconsistencies in his story. (R. 454-458). On March 16, 2010, the claimant went for the fourth time to the Emergency Department complaining of jaw pain, and Dr. Maria Falcon diagnosed his problem as another dental abscess and prescribed non-narcotic drugs for pain. (R. 449).

    At the hearing, the claimant alleged breathing problems and nose bleeds as a result of asthma and allergies. The claimant testified that he uses an inhaler at least four times a day. Emergency Department staff and Dr. Atsuko Ishikawa, the claimant's treating psychiatrist, made notes in their records that support the claimant's allegations of asthma. (R. 57-58, 245, 444).

    The claimant also alleged back pain from either inherited arthritis or scoliosis and testified at oral hearing that, "[t]here ain't a day go by that my back don't hurt." (R. 60). No medical record exists in the record of the claimant seeking treatment for back pain. The ALJ referred the claimant to Dr. Eston Norwood III, a board certified psychologist and neurologist, for a consultative examination. Dr. Norwood's evaluation recognized the claimant's social and behavioral adjustment problems, but found that the claimant had zero neurological impairment in his neck or spine that would impair his ability to perform work-related activities. (R. 604).

*Mental Limitations*

    On November 13, 2008, one month after the assault, Decatur General West Hospital admitted the claimant for depression, anxiety, suicidal ideation, and severe mood fluctuations. This episode was the claimant's first psychiatric hospitalization. Dr. Atsuko Ishikawa, a board-certified psychiatrist and treating physician, wrote in his record that he suspected bipolar disorder and prescribed the claimant Seroquel, Depakote, and Celexa that improved his condition. After

6

four days in the hospital, Dr. Ishikawa discharged the claimant after he reported that he was "feeling great" and voiced no complaints of depression or anxiety. (R. 245, 253).

After discharge, the claimant allegedly could not afford the prescribed drugs and returned to Decatur General West on January 15, 2009 with severe suicidal thoughts. During this hospitalization, Dr. Ishikawa affirmatively diagnosed the claimant's problem as bipolar disorder; ruled out major depressive order; and noted marijuana abuse and a positive urine test for benzodiazephines and opiates. During this visit, Dr. Ishikawa changed the treatment plan so that he could provide the claimant with free samples so that he could continue to take the prescribed medicine upon discharge. In a similar pattern as the previous psychiatric hospitalization, the claimant responded well to medication and reported "feeling good" upon discharge four days after being admitted. (R. 349, 357, 366).

On May 25, 2009, the claimant ran out of free samples of medication and returned to Decatur General West. Hospital triage staff placed the claimant on suicide watch every fifteen minutes after he complained of having "crazy thoughts," but the claimant denied suicidal ideation and left the hospital without treatment. (R. 465-466).

The claimant's attorney referred him to Dr. John Haney, PhD, a board-certified psychologist, for a consultative examination. In his narrative report, Dr. Haney determined that the claimant had chronic emotional and social adjustment problems and that he functioned in the mild range of mental retardation. Dr. Haney opined that the claimant will experience extreme difficulty responding to customary work pressures; responding appropriately to coworkers, supervisors and the public; and performing repetitive tasks in a work setting. Dr. Haney also completed a supplemental questionnaire that mirrored the psychiatric review technique form. Dr.

Haney found that the claimant possessed marked restriction of activities of daily living; marked difficulty in maintaining social functioning; and extreme deficiencies in concentration, persistence, and pace. (R. 595 - 602).

While no confirming record of diagnosis or treatment exists in the record, the claimant testified that he has a history of ADHD and took Ritalin from age five to eighteen. (R. 245). The claimant's medical records begin with the October 13, 2008 surgery, over two months after the claimant initially applied for disability benefits for ADHD on July 28, 2008.

The claimant told Dr. Ishikawa during his first hospitalization that he smokes marijuana regularly and sometimes takes his friends' Xanax and Klonopin to "calm him down." (R. 248). During his second psychiatric hospitalization in January of 2009, the claimant denied the use of narcotics, even after Dr. Ishikawa told him of his positive urine test for benzodiazephine, cannabis, and opiates. (R. 357).The claimant told Dr. Haney that he used alcohol and pills until his October 2008 assault, but said he has not used drugs or alcohol, other than marijuana, since that time. (R. 596).

*The ALJ Hearing*

After the Commissioner denied the claimant's request for Social Security disability benefits and supplemental security income, the claimant requested and received a hearing on April 21, 2010 before an ALJ. (R. 44). At the hearing, the claimant testified that he lost his job at Big Lots because he missed three weeks of work after his October 2008 facial reconstructive surgery. After losing his job, the claimant attended multiple job interviews, but no employers called him back. The claimant testified that he cannot work because of his "thinking problems" that result in anxiety attacks, suicidal thoughts, and severe mood fluctuations. The claimant also

claimed that physical ailments from facial/dental pain, back pain, and asthma further aggravate his rapid mood changes and prevent him from working. (R. 54-61). The claimant explained that he lives with his disabled girlfriend; can drive a car although he has no driver's license; and spends most of his time watching tv, playing video games, or watching his brother work. (R. 48-51, 65).

The claimant stated to the ALJ that he received SSI benefits as a child until he missed an appointment with the psychiatrist when he was eighteen; however, the claimant could not recall for what particular disability he qualified at that time. Nothing in the claimant's record confirms or denies the testimony that the claimant previously received SSI benefits. The claimant confirmed that after his initial psychiatric hospitalization in November 2008, doctors referred him to a mental health clinic, but he stated he did not attend because he could not afford the first visit. (R. 55-56). The claimant testified that he stopped taking his prescriptions for Depakote, Seroquel, Trazadone, Celexa, and Zytrec when he ran out of free samples from Dr. Ishikawa. According to the claimant's testimony, he sought more free samples from Dr. Ishikawa on one occasion, but did not get any samples because the doctor was on vacation. Since then, the claimant has neither sought nor taken any prescribed medication. (R. 58, 63).

The claimant stated that inherited scoliosis affects his ability to work. The claimant alleged that he previously sought treatment for his back pain, but he stated that his last treatment was so long ago he could not remember any details. (R. 60). The claimant also testified that he underwent surgery on a tumor in his groin at age sixteen that reduced his strength and now prevents him from bending over and picking things up. (R. 70). No medical document in the claimant's record supports the allegations of scoliosis or groin surgery. The claimant testified that

his asthma prevents him from breathing during pollen season and causes his nose to bleed. The claimant admitted that he smokes cigarettes, but testified that he does not drink; does not take narcotics; and has taken no medicine since failing to get samples from Dr. Ishikawa when he was on vacation. (R. 58-63).

Ms. Melissa Neil, a vocational expert, testified at the hearing concerning the type and availability of jobs that the claimant was able to perform. (R. 67). The ALJ posed a hypothetical individual with the age, education, prior work history and training of the claimant and asked Ms. Neil if jobs existed in the economy for that individual. The ALJ asked Ms. Neil to assume that the hypothetical individual can write, but shows some difficulty reading; can lift fifty pounds occasionally (up to one-third of a day) and twenty-five pounds frequently (up to two-thirds per day); can have occasional contact with supervisors and co-workers, but should have no contact with the general public; and can work a simple, low stress job with gradually introduced changes in work environment and expectations. The ALJ further stipulated that the individual should not be exposed to concentrated fumes or odors and should not be required to concentrate in more than two-hour periods across an eight hour workday with normal breaks. Ms. Neil testified that the such an individual can perform jobs as a laundry worker, an agricultural worker, or a cleaner. Ms. Neil further testified that jobs as laundry workers, agricultural workers, and cleaners exist in significant numbers both in Alabama and throughout the national economy. (R. 73-75).

*The ALJ's Decision*

On October 1, 2010, the ALJ issued a decision finding the claimant not disabled under the Social Security Act. (R. 28). First, the ALJ found that the claimant's work activity after the alleged disability onset did not rise to the level of substantial gainful activity. (R. 17). The ALJ

next determined that the claimant had severe impairments of asthma and bipolar disorder, but found that the alleged impairments of ADHD, scoliosis, arthritis, facial or dental problems, and polysubstance abuse were not severe. The ALJ assessed the claimant's ADHD, sciolosis, and arthritis as non-severe because the claimant's medical records did not support the existence of those impairments. Reviewing the opinions of both treating and consultative physicians, the ALJ found that the claimant's facial and dental problems were non-severe because they did significantly limit the claimant's ability to work. Lastly, the ALJ found the claimant's polysubstance abuse immaterial to the analysis of his impairments. The ALJ noted that the only documented episodes of substance abuse were associated with the claimant's November 2008 and January 2009 psychiatric hospitalizations. The ALJ found that those two brief, isolated episodes did not significantly elevate the severity of the claimant's mental impairments. As the ALJ determined that the claimant was not under a disability for twelve consecutive months regardless of drug or alcohol abuse[2], he found the alleged polysubstance abuse immaterial. (R. 18-19).

Although the ALJ found the impairments of asthma and bipolar disorder to be severe, he did not find them severe enough either singly or in combination to meet one of the listed impairments in 20 C.F.R.pt. 404, subpt. P, app. 1. (R. 18 -20). In applying the special technique pursuant to 20 C.F.R. 404.1520(d), the ALJ found that the claimant's mental impairments

---

[2]The ALJ's written decision contains two obvious typographical errors. The second to last sentence of the first paragraph on page 6 of the decision reads, "There *has been period* of 12 consecutive months during which the claimant has been found to be under a disability due to the severity of his mental conditions regardless of substance abuse." Based on the context of the sentence and the decision as a whole, that sentence is supposed to read, "There has *not* been *a* period of 12 consecutive months during which the claimant has been found to be under a disability due to the severity of his mental condition regardless of substance abuse."

resulted in no more than moderate restrictions of daily living activities; moderate difficulties with maintaining social functioning; and moderate deficiencies with maintaining concentration, persistence, and pace. Based on the evidence in the medical record, the ALJ found that the claimant had no more than one or two brief periods of decompensation. Using the special technique framework, the ALJ held that the claimant's mental impairments did not cause at least two "marked" limitations or enough episodes of decompensation to meet a listing. (R. 20).

In determining that the claimant's mental impairment did not meet a listing, the ALJ largely rejected the evaluations made by consultative psychologist Dr. John Haney. Dr. Haney found that the claimant possessed marked restrictions in daily activities; marked degree of difficulty in maintaining social function; and extreme deficiencies in concentration, persistence, or pace.(R. 601). The ALJ articulated specific reasons for giving little weight to Dr. Haney's opinion and finding the claimant's mental impairment less severe. The ALJ pointed to evidence that would not indicate marked difficulties in daily activities or maintaining social functioning, such as the claimant's interacting socially with his friends and girlfriend and exercising responsibility in his daily life by performing household chores. The ALJ noted that Dr. Haney relied heavily on the claimant's subjective testimony; however, the ALJ pointed to medical records that invalidated much of that testimony, such as the records that indicate the claimant lied about illegal drug use. Lastly, because Dr. Ishikawa controlled the claimant's mental impairment with the use of proper medication, the ALJ found that Dr. Haney overstated the overall severity of the claimant's mental impairments. (R. 26).

The ALJ next turned to whether the claimant retained the residual functioning capacity to work. Based on the intensity, persistence, and limiting effects of the symptoms caused by the

claimant's medically determinable impairments of asthma and bipolar disorder, the ALJ determined that the claimant possessed the residual functioning capacity to perform medium work. The ALJ advised that the claimant should not work in concentrated exposure to fumes, odors, dusts, gases or poor ventilation; should not have contact with the general public but can have occasional contact with supervisors and coworkers; should work at a job that is simple and low stress; should have changes in the work environment and expectations gradually introduced; and should not concentrate for more than two-hour periods across an eight-hour workday with normal breaks. (R. 21).

Pointing to contradictions and discrepancies in the claimant's subjective testimony and objective evidence in the medical record, the ALJ largely discredited the claimant's testimony regarding the intensity, persistence, and limiting effect of his symptoms. For example, the ALJ discredited the claimant's subjective testimony regarding the severity of his impairments and his inability to work because the claimant worked up to and beyond his application date, failed to comply with prescribed treatment even after being provided free samples, and sought employment during the appeal process. The ALJ instead gave significant weight to the objective findings of consultative neurologist Dr. Eston Norwood who found no significant neurological impairment whatsoever. Despite Dr. Norwood's finding of no neurological impairment that would prevent the claimant from performing work related activities such as sitting, standing, walking, lifting, carrying, or handling objects, the ALJ gave the claimant the benefit of the doubt and restricted him to medium work, a level that he had successfully performed in the past. (R. 22- 24).

After finding that the claimant has no past relevant work under 20 C.F.R. §§ 404.165 and

416.965, the ALJ determined that jobs exist in significant numbers in the national economy that the claimant can perform based on his age, education, work experience, and residual functional capacity. Based on the testimony of a vocational expert, the ALJ found that the claimant can work medium and unskilled jobs such as a laundry worker, agricultural worker, and cleaner. As the claimant retained the residual functioning capacity to perform jobs that exist in significant numbers across the national economy, the ALJ ruled that the claimant was not disabled under the Social Security Act. (R. 27-28).

## V. DISCUSSION

**1) The ALJ Gave Proper Weight to Dr. Haney's Opinion**

The claimant alleges that the ALJ improperly gave little evidentiary weight to the opinion of Dr. Haney, the consultative psychologist. This court finds that the ALJ applied the proper legal standards when he afforded little weight to Dr. Haney's evaluation and that substantial evidence supports his decision.

If the ALJ states specific grounds for doing so and substantial evidence supports his decision, he can reject any medical opinion. *See Syrock*, 764 F.2d at 835; *Sharfaz* 825 F.2d at 279. In general, a one-time consultative physician's opinion is entitled to less weight than a treating physician's opinion. *Broughton*, 776 F.2d at 961-62. Furthermore, regulations allow an ALJ to consider the examining relationship, treatment relationship, supportability, consistency, and other factors when weighing the opinions of physicians. 20 C.F.R. § 416.927(d)(2-6).

Taking up an entire page of his opinion, the ALJ articulated numerous reasons why he found Dr. Haney's opinion unreliable. First, the ALJ discussed the context in which Dr. Haney produced his opinion. The claimant's counsel retained Dr. Haney for a one-time consultative

examination, so the ALJ followed the general rule and afforded his opinion as a consultative physician less weight than that of a treating physician.

The ALJ expressed further reasons for discrediting Dr. Haney when he noted that the psychologist provided very little explanation of the evidence on which he relied in forming his opinion. The ALJ correctly pointed out that Dr. Haney's opinion seems based almost completely on the claimant's responses to his questions, but that evidence in the medical record contradicts several of those responses. For example, the claimant told Dr. Haney that he has not used alcohol or pills since his October 2008 assault, but records from Dr. Ishikawa reveal positive urine tests for opiates, benzodiazephines, and marijuana in and beyond November 2008.

The ALJ declared Dr. Haney's test results invalid and not supported by evidence in the record. Dr. Haney largely discredited his own report when he wrote in his results, "Reading difficulties and an understandable need to call psychological difficulties to the attention of those evaluating him may have affected the validity of these test results." The ALJ asserted that Dr. Haney overestimated the severity of the claimant's symptoms because the medical record reveals that the claimant's mental impairments greatly improved when properly medicated.

The ALJ also pointed out evidence in the record that does not support Dr. Haney's opinion regarding the claimant's social functioning. Dr. Haney's evaluation estimates the claimant has "marked" restrictions of daily living and social function, but the claimant goes about his daily life unassisted and reports that he has friends, a girlfriend that he lives with and shares household responsibilities, and a brother whom he visits and sometimes helps with his work. In sum, the ALJ found Dr. Haney's evaluation unpersuasive because of invalid testing and contradictory evidence in the record.

15

As the ALJ applied the proper legal standards and substantial evidence supported his factual conclusions, the ALJ did not err when he afforded little weight to the opinion of the consultative psychologist.

**2) The ALJ Developed a Full and Fair Record**

The claimant further alleges that the ALJ failed to develop the record by neglecting to order a second consultative psychological evaluation. This court finds that the ALJ fully developed the record and had no duty to order a second consultative psychological evaluation for the reasons explained below.

The claimant carries the ultimate burden of proving his disability. Regulations require the ALJ to develop a full and fair record, but he does not have to disprove the claimant's allegations of disability. *See* 20 C.F.R. §§ 404.1512(a) and (d), 416.912(a) and (d). While the ALJ may order a consultative examination when the evidence is insufficient to make a determination, he is only required to do so when that exam is necessary to make an informed decision. *See Reeves,* 734 F.2d at 522. However, an ALJ has no duty to order a consultative evaluation where a sufficient record exists to make a determination and no previous treating or consultative physician has recommended an additional evaluation. *See Wilson*, 179 F.3d at 1278; *see also Good*, 240 F. App'x. at 404.

In Wilson v. Apfel, the Eleventh Circuit held that the ALJ possessed a sufficient record and, therefore, had no obligation to order additional expert medical testimony. The case record in Wilson, consisting of multiple physicians' opinions, provided substantial evidence to declare the claimant's impairment not severe without ordering another consultative evaluation. The court opined that because the record was sufficiently developed, the ALJ had no obligation to order an

additional consultative evaluation. *Wilson,* 179 F.3d at 1278. In Good v. Astrue, an unpublished opinion, the Eleventh Circuit held that because the ALJ possessed a sufficient record consisting of multiple physicians' opinions and the claimant's own testimony, he was entitled to reject the opinion of the treating physician without ordering an additional consultative examination. *Good*, 240 F. App'x at 404.

This case aligns with the facts of Good, except the ALJ in this case rejected the opinion of the *consultative* physician, which generally carries less weight than the treating physician's opinion. The claimant's argument that the ALJ improperly rejected Dr. Haney's opinion without ordering an additional examination carries no merit because sufficient evidence existed within the record for the ALJ to make a determination without a second psychological evaluation. The ALJ did not need an additional consultative evaluation to make an informed decision; therefore, the ALJ had no duty to order one.

The record in this case consisted of over 370 pages of medical records from seven separate hospital visits for various symptoms over an eighteen month time span. The ALJ gave great weight to the opinion of *treating* psychiatrist, Dr. Atsuko Ishikawa, who observed the claimant for eight days over two hospitalizations and provided over 200 pages of records. The ALJ also gave great weight to the opinion of the other consultative physician, Dr. Eston Norwood, whose evaluation revealed no neurological impairments that prevent the claimant from physically performing work related activities.

Dr. Norwood, Dr. Haney, and Dr. Ishikawa all recognized the claimant's emotional and social adjustment problems, and the ALJ accounted for those impairments when he determined that the claimant should not work in jobs that expose him to the general public. However, two

out of three doctors, including the treating psychiatrist, found the claimant able to work. The claimant's own testimony that he does household chores and shops with little difficulty provided substantial evidence of his ability to perform work related functions. In short, the ALJ possessed a full and fair record and based his decision on the evidence in the record. No treating or consultative physician recommended another evaluation of the claimant and the record contained sufficient evidence to make a proper determination. Therefore, this court finds that the ALJ had no duty to order an additional consultative evaluation.

## VI. CONCLUSION

For the reasons stated above, this court concludes that the Commissioner applied the proper legal standards and that substantial evidence supported his factual conclusions; therefore, the Commissioner's decision is hereby AFFIRMED.

DONE and ORDERED this 25th day of September, 2012.

_____
KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE